**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN IGLESIAS and HENRY SANTANA, on behalf of themselves and all others similarly situated, | Index No. 16-cv-4598(FB) |
| *Plaintiffs,* | **FIRST AMENDED COMPLAINT** |
| -*against*- | |
| NATIONAL BROADBAND COMMUNICATIONS LLC, EXECUTIVE TECHNICIANS CORPORATION, CHRISTIAN CABEZAS, and ARAM COLINARES, | |
| *Defendants.* | |

Plaintiffs, Juan Iglesias and Henry Santana ("Plaintiffs"), by their counsel the Law Offices of Martin E. Restituyo, P.C., make the following allegations against Defendants National Broadband Communications LLC, Executive Technicians Corporation, Christian Cabezas, and Aram Colinares (collectively, "Defendants"):

## OVERVIEW OF THE ACTION

1.    Defendants operate a company that provides installation and repair services to DIRECTV's customers. Under the particular arrangement worked out between DIRECTV and the Defendants, whenever a DIRECTV customer in New York requires an installation or has technical problems with their equipment, DIRECTV reaches out to Defendants and Defendants send one of their employees to service the request.

2.    In order to receive work orders from DIRECTV, DIRECTV requires the responding technician to be certified by them. As a result, DIRECTV provides regular examinations and those individuals that pass the test are then given a DIRECTV Tech ID

number.

3.      Notwithstanding that the technicians are independently certified by DIRECTV, and presumably could get assignments directly from DIRECTV, both DIRECTV and the Defendants agree to funnel all work through the two corporate defendants - National Broadband Communications LLC and Executive Technicians Corporation.

4.      Pursuant to this arrangement, where Defendants were put in charge of Plaintiffs schedule, job assignments, and rate of pay, among other things, Defendants became Plaintiffs' employer.

5.      Notwithstanding the employer-employee nature of the relationship, Defendants led Plaintiffs to believe that they were independent contractors, and as a result were subjected to unlawful deductions from their pay and were unlawfully compelled to pay for Defendants' business expenses or were unlawfully charged back for omissions or other losses allegedly caused by them through simple negligence or through no fault of their own.

6.      In addition, Defendants failed to pay Plaintiffs proper overtime pay in accordance with the requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws ("NYLL").

7.      Plaintiffs bring this lawsuit as a collective action under the FLSA, 29 U.S.C. §§ 201, et seq. (the "Collective Claim") and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all persons similarly situated (the "Class Claim") who suffered damages as a result of Defendants' violations of the Federal Fair Labor Standards Act and of the Labor Laws of the State New York.

8.      Plaintiffs seek to represent current and former employees of the Defendants who were classified as independent contractors so that Defendants could avoid paying them proper

wages in accordance with the FLSA and NYLL (hereinafter, the "Technicians").

9.     The Groups and classes that Plaintiffs seek to represent are:

   a.   The "Federal Collective Group" that consists of all individuals who were or are employed by Defendants in the tristate area as Technicians at any time from August 17 2013, who timely opt-in to any such collective group (the "Federal Eligibility Period");

   b.   The "New York Class" consists of all individuals that were employed as Technicians in the State of New York at any time since August 17, 2010 (the "Class Period").

10.    Defendants violated Section 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207 by not paying the Federal Collective Group overtime pay for a work week longer than forty hours.

11.    Defendants violated the rights of the New York Class under New York Labor Law and the New York State Labor Department's Codes, Rules and Regulations ("NYCRR") as follows:

   a.   Defendants violated 12 NYCRR § 142-2.2 which requires employers to pay non-exempt employees overtime at the rate of one and one-half times the employee's regular salary for all hours worked in excess of 40 hours in any given work week.

   b.   Defendants violated New York Labor Law Section 193 by impermissibly deducting monies from the compensation of certain New York Class members to pay for Defendants' overhead expenses.

12.    As a result of Defendants' violations of the FLSA and New York labor laws, Plaintiffs and the members of the Collective Class were illegally and grossly under-compensated

3

for their work.

## JURISDICTION AND VENUE

13.      Jurisdiction is proper as this Court has original federal question jurisdiction under 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§201, *et seq.* This Court has supplemental jurisdiction over the NYLL claims, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

14.      Venue is proper under 28 U.S.C § 1391(b)(l) because the Defendants reside in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Plaintiff is also a resident in this district.

## PARTIES

### Plaintiffs

15.      Plaintiff, Juan Iglesias (hereinafter "Iglesias"), is and at all relevant times has been a resident of Kings County, New York,

16.      During the Federal Eligibility Period and the Class Period, Plaintiff was employed as a technician by Defendants.

17.      Mr. Iglesias' primary duty as Defendants' employee was to make house calls and provide technical service to DIRECTV customers who needed DIRECTV to be installed in their homes or were having problems with their equipment.

18.      During the relevant time period, Plaintiff was not a "professional" as defined 29 C.F.R. § 541.300(a) or in 12 NYCRR § 142-2.14(c)(4)(iii); nor did Plaintiff perform executive or administrative functions as defined in 29 C.F.R. § 541.200(a) or 12 NYCRR §§ 142- 2. 14(c)(4)(i), 142-2.14(c)(4)(ii)

19.      Plaintiff, Henry Santana (hereinafter "Santana"), is and at all relevant times has

4

been resident of Queens County, New York.

20.    During the Federal Eligibility Period and the Class Period, Plaintiff was employed as a technician by Defendants.

21.    Mr. Santana's primary duty as Defendants' employee was to make house calls and provide technical service to DIRECTV customers who needed DIRECTV to be installed in their homes or were having problems with their equipment.

22.    During the relevant time period, Plaintiffs were not "professionals" as defined 29 C.F.R. § 541.300(a) or in 12 NYCRR § 142-2.14(c)(4)(iii); nor did the Plaintiffs perform executive or administrative functions as defined in 29 C.F.R. § 541.200(a) or 12 NYCRR §§ 142- 2.14(c)(4)(i), 142-2.14(c)(4)(ii)

**Defendants**

23.    During the Federal Eligibility Period and the State Law Class Periods Defendants National Broadband Communications LLC and Executive Technicians Corporation were, in fact, interchangeable entities. Payment checks to Plaintiffs would come from either company without regard for work.

24.    Defendant National Broadband Communications LLC is a domestic limited liability Company with its principal place of business listed as 184 South Avenue, Staten Island, New York 10303.

25.    Defendant Executive Technicians Corporation is a domestic corporation with its principal place of business located at 9533 97th Street, Ozone Park, Queens County, New York 11416.   Upon information and belief, the company's headquarters is the home of defendant Christian Cabezas.

26.    Defendants National Broadband Communications LLC and Executive Technicians

5

Corporation are hereinafter collectively referred to as the "Corporate Defendants."

27.     Defendant Christian Cabezas is an individual engaging (or who has engaged) in business within this judicial district during the relevant time period. Upon information and belief, Mr. Cabezas is a resident of Queens County, New York.

28.     Defendant Christian Cabezas is sued individually in his capacity as owner, officer and or agent of the Corporate Defendants.

29.     Defendant Aram Colinares is an individual engaging (or who has engaged) in business within this judicial district during the relevant time period.  Upon information and belief Mr. Colinares is a resident of Richmond County, New York.

30.     Defendant Aram Colinares is sued individually in his capacity as owner, officer and or agent of the Corporate Defendants.

31.     Defendants Christian Cabezas and Aram Colinares are hereinafter collectively referred to as the "Individual Defendants."

**Defendants Constitute a Joint Employer**

32.     The Individual Defendants possess or possessed operational control over the Corporate Defendants, an ownership interest in the Corporate Defendants, or controlled significant functions of the Corporate Defendants.

33.     The Individual Defendants determined the wages and compensation of Defendants' employees, including for Plaintiffs and the Technicians.  They also established the schedules for Plaintiffs and the Technicians, maintained employee records, and had the authority to hire and fire Plaintiffs and the Technicians.

34.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

6

35.     Each Defendant possessed substantial control over Plaintiffs (and other similarly situated Technician's) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated Technicians, referred to herein.

36.     Defendants jointly employed Plaintiffs, and all similarly situated Technicians, and are employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

37.     In the alternative, Defendants constitute a single employer of Plaintiffs and the similarly situated Technicians.

38.     Upon information and belief, the Individual Defendants operate the Corporate Defendants as alter egos of themselves, and fail to operate the Corporate Defendants as legal entities separate and apart from themselves by, among other, things:

    a.  failing to adhere to the corporate formalities necessary to operate the Corporate Defendants as separate and legally distinct entities;

    b.  defectively forming or maintaining the Corporate Defendants by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    c.  transferring assets and debts freely as between all Defendants;

    d.  operating the Corporate Defendants for their own benefit;

    e.  operating the Corporate Defendants for their own benefit and maintaining control over them as a closely controlled entities;

    f.  intermingling assets and debts of their own with that of the Corporate Defendants; and

    g.  diminishing and/or transferring assets of the Corporate Defendants to protect

7

their own interests.

39.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and NYLL.

40.     Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.     In each year from 2013 to 2016, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000.

42.     In addition, Defendants were directly engaged in interstate commerce.

## COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiffs bring this action on behalf of themselves and the Federal Collective Group pursuant to FLSA § 216(b).

44.     Plaintiffs are informed and believe that Defendants have over 40 employees working as Technicians in the tristate area.

45.     Plaintiffs are similarly situated to the other members of the Federal Collective Group because they all (a) worked for Defendants as Technicians during the Federal Eligibility Period; (b) functioned exclusively or primarily as employees of the Defendants; (c) had limited or no administrative responsibilities; (d) were and are not professionals within the meaning of the FLSA; and (e) worked overtime hours without receiving overtime compensation. As a result, there are questions of law and fact common to Plaintiffs and the Federal Collective Group; and, therefore, Plaintiffs have a well-defined community of interest with and are adequate representatives of the Federal Collective Group.

46.     The following questions of law and fact common to the Federal Collective Group

predominate over questions which may affect only individual members of the Federal Collective Group:

    a.   Whether defendant failed to adequately compensate the members of the Federal Collective Group for overtime hours worked as required by the Fair Labor Standards Act, 29 U.S.C. § 207, because Plaintiffs and the members of the Federal Collective Group are not exempt employees under the Fair Labor Standards Act;

    b.   Whether the members of the Federal Collective Group have been damaged and, if so, the extent of such damages; and

    c.   Whether defendant willfully violated the FLSA and, if so, the extent of damages associated with such willful violation.

## CLASS ACTION ALLEGATIONS

47.    Plaintiffs also bring this action on behalf of themselves and the New York Class, pursuant to Fed. R. Civ. P. 23.

48.    Upon information and belief, the New York Class is so numerous that joinder is impractical.

49.    There are questions of law and fact common to Plaintiffs and the other members of the New York Class; and, therefore, Plaintiffs are similarly situated to the other members of the New York Class and are adequate representatives of the New York Class.

50.    The following questions of law and fact are common to the State Law Class and predominate over questions which may affect only individual members of the State Law Class:

    a.   Whether defendant failed to adequately compensate the members of the New York Class for overtime hours worked as required by the Labor Laws of New York, including 12 NYCRR § 142-2.2;

b.  Whether defendant wrongfully deducted monies from the wages of the members of the New York Class and/or otherwise required New York Class members to pay for expenses and for reversed charges in violation of the Labor Laws of New York, including, without limitation, Labor Law Article 6 § 193; and

c.  Whether the members of the New York Class have been damaged and, if so, the extent of such damages and whether the members of the New York Class are entitled to penalties and, if so, the extent of such penalties.

51.    Plaintiffs are asserting claims that are typical of the claims of the New York Class.

52.    Plaintiffs will fairly and adequately represent and protect the interests of the New York Class and have no interests antagonistic to those of the other members of the New York Class. Plaintiffs have retained attorneys who are competent and experienced in the prosecution of class and collective action litigation.

53.    Plaintiffs and the other members of the New York Class have suffered damages as a result of Defendant's wrongful conduct. Because of the size of the claims of the individual members of the New York Class, few, if any, members of the New York Class could afford to seek legal redress for the wrongs complained of herein. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy between Plaintiffs and the other members of the New York Class, and Defendants.

## FACTUAL ALLEGATIONS

54.    DIRECTV is a provider of digital television entertainment in the United States and Latin America. The Company operates two direct-to-home (DTH) business units: DIRECTV U.S. and DIRECTV Latin America, which are engaged in acquiring, promoting, selling and distributing digital entertainment programming primarily through satellite to

residential and commercial subscribers. *See*

https://www.google.com/finance?q=NASDAQ%3ADTV&ei=_75dWNiPDYjhmAHy_JnIB
w

55.     Consumers who purchase DIRECTV subscribe to various packages of DIRECTV
programming for which the subscriber pays a monthly fee. Additional monthly fees may include
a protection plan (which provides for repair or replacement of consumer-leased equipment from
damages caused by lightning, power surges, floods, etc.), DVR, additional receivers, HD
channels, and other premium channel packages. See https://en.wikipedia.org/wiki/DirecTV

56.     Whenever a DIRECTV customer has a problem that requires in home technical
assistance, such as the installation, repair or replacement of the equipment necessary to receive
the paid for service, DIRECTV services that request through a network of DIRECTV certified
technicians.

57.     In order to become a DIRECTV Certified Technician, would-be repairmen are
required to pass an examination given by the company to assure competence with respect to
DIRECTV company and customer needs.

58.     Once, DIRECTV'S competency exam has been passed, DIRECTV issues these
individuals their very own DIRECTV Tech ID number.

59.     Although the process for becoming a DIRECTV Certified Technician is an
individual one, in New York DIRECTV acts through entities, such as the Corporate Defendants,
who go out and hire DIRECTV Certified Technicians in order to service DIRECTV's requests.

60.     Thus, Defendants operate a company that provides installation and repair
services to DIRECTV's customers. Under the particular arrangement worked out between
DIRECTV and the Defendants, whenever a DIRECTV customer in New York requires an

installation or has technical problems with their equipment, DIRECTV reaches out to Defendants and Defendants send one of their employees (who are DIRECTV Certified Technicians) to service the request.

61.     DIRECTV pays the Defendants and undisclosed amount for this service, and Defendants in turn set the pay scale for the responding technician.

62.     Thus, pursuant to this arrangement, Defendants are put in charge of a technician's schedule, job assignments, and rate of pay, among other things.

63.     Thus, this is how Defendants became Plaintiffs' employers.

64.     Notwithstanding the employer-employee nature of the relationship, Defendants led Plaintiffs to believe that they were independent contractors, and as a result were subjected to unlawful deductions from their pay and were unlawfully compelled to pay for Defendants' business expenses or were unlawfully charged back for omissions or other losses allegedly caused by them through simple negligence or through no fault of their own

**Juan Iglesias**

65.     Plaintiff, Juan Iglesias is a DIRECTV Certified Technician with Tech ID No. 998470.

66.     On or about the summer of 2011 Mr. Iglesias was hired to work as Technician providing technical assistance and repairs to Defendants' DIRECTV customers.

67.     In accordance with his job duties, Mr. Iglesias was required to respond to service calls assigned to him by the Defendants. His service calls were assigned during one of three shifts (8:00 AM – 12:00 PM, 12:00 PM – 4:00 PM, and 4:00 PM – 6:00 PM).

68.     From summer 2011 through his resignation in June 2016, Mr. Iglesias worked at least 6 days a week, Monday through Saturday, from 8:00 AM – 4:00 PM every day. For

most of the year this meant that Mr. Iglesias worked 48 hours per week.

69. During the summer months, June, July and August, Mr. Iglesias also worked the 4:00 PM – 6:00 PM shift, and so during those months he worked 60 hours per week.

70. Even though he was an employee, Mr. Iglesias' wages consisted solely of the commission that he was paid for every service call. Mr. Iglesias would get $30 per job no matter how many hours in the week he worked.

71. In addition, Defendants required Mr. Iglesias and the other Technicians to purchase their own supply, inclusive of ladders, cars, cables, wires, staples, gloves, drill, drill bits, a particular kind of cell phone, and all of the tools and equipment necessary to perform their duties.

72. Defendants also impermissibly and unlawfully deducted from, or caused to be deducted from Mr. Iglesias and the Technician's wages compensation for, among other things, but not limited to, overhead associated with the operation of the office, alleged errors made during the service call, customer complaints allegedly made post the service call, and other arbitrary deductions for which no explanation has ever been provided.

**Henry Santana**

73. Plaintiff, Henry Santana is a DIRECTV Certified Technician with Tech ID No. 995821.

74. On or about the summer of 2007 Mr. Santana was hired to work as Technician providing technical assistance and repairs to Defendants' Direct TV customers.

75. In accordance with his job duties, Plaintiff was required to respond to service calls assigned to him by the Defendants. His service calls were assigned during one of three shifts (8:00 AM – 12:00 PM, 12:00 PM – 4:00 PM, and 4:00 PM – 6:00 PM).

13

76.     From summer 2007 through November 2016, Mr. Santana worked at least 6 days a week, Monday through Saturday from 8:00 AM – 4:00 PM every day. Sometimes Mr. Santana even worked on Sundays, from 8:00 AM – 4:00 PM as well. This meant that for most of the time that he was worked with Defendants Mr. Santana has worked at least 48 hours per week and sometimes even up to 54 hours per week.

77.     Even though Mr. Santana is an employee, his wages consist solely of the commission that he is paid for every service call. Mr. Santana gets $30 per job no matter how many hours in the week he works.

78.     As with Mr. Iglesias and the other Technicians, Defendants require Mr. Santana to purchase his own work supplies, inclusive of ladders, cars, cables, wires, staples, gloves, drill, drill bits, a particular kind of cell phone, and all of the tools and equipment necessary to perform his duties.

79.     Defendants also impermissibly and unlawfully deduct from, or caused to be deducted from Mr. Santana's wages compensation for, among other things, but not limited to, overhead associated with the operation of the office, alleged errors made during the service call, customer complaints allegedly made post the service call, and other arbitrary deductions for which no explanation is provided.

**Plaintiffs and Technicians Were Employees**

80.     Contrary to Defendants' treatment of them as independent contractors, however, Plaintiffs and the Technicians were Defendants' employees because:

a.   They did not have a choice as to when, where and how they could perform their services;

b.   Defendants, and certainly not Technicians, were responsible for all DIRECTV and client contact;

14

    c.  Defendants were responsible for billing and collections from DIRECTV and/or DIRECTV's customers;

    d.  Plaintiffs and the other Technicians were required to work exclusively for the Defendants;

    e.  Defendants set Plaintiffs and the Technicians' rate of pay;

    f.  Defendants were the sole evaluators of job performance;

    g.  Defendants required prior permission for absences; and

    h.  Defendants had the right to hire and fire Plaintiffs and the Technicians at will.

81.    Conversely, Plaintiffs and the other Technicians, could not be independent contractors where they were not free from supervision, direction and control in the performance for their duties.  Moreover, they:

    a.  did not have their own businesses;

    b.  did not carry their own insurance;

    c.  did not set their own schedule;

    d.  did not choose their own customers;

    e.  were not free to refuse work;

    f.  did not set or negotiate their own pay rates; and

    g.  were not free to hire help.

82.    Plaintiffs and the members of the Federal Collective Group were not "professionals" and did not perform executive or administrative functions as defined by the FLSA.

83.    Plaintiffs and the members of the New York Class were not "professionals" as defined by 12 NYCRR § 142-2.14(c)(4)(iii), and did not perform executive or administrative

functions as defined in 12 NYCRR §§ 142-2.14(c)(4)(i) and 142-2.14(c)(4)(ii)

## FIRST CAUSE OF ACTION
### Restitution for Failure to Pay Overtime to the Federal Class
### (Violation of FLSA § 207)

84.     Plaintiffs incorporate by reference all of the allegations of all prior paragraphs as though fully set forth herein.

85.     Section 207(a)(l) of the Federal Fair Labor Standards Act provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(l).

86.     There are no exemptions applicable to Plaintiffs and members the Federal Collective Group.

87.     For purposes of the Fair Labor Standards Act, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint.

88.     As a result of Defendant's failure to pay overtime, Plaintiff and the members of the Federal Collective Group were damaged in an amount to be proven at trial.

89.     In committing the wrongful acts alleged to be in violation of the Fair Labor Standards Act, Defendants acted willfully in that they knowingly, deliberately and intentionally failed to pay overtime to Plaintiffs and the other members of the Federal Collective Group.

90.     Therefore, Plaintiffs demand that they and the members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked

in any work week for which they were not compensated, plus liquidated damages, interest and attorneys' fees as provided by law.

**SECOND CAUSE OF ACTION**
**Restitution for Failure to Pay Overtime to the New York Class**
**(Violation of NYCRR § 142-2.2)**

91.     Plaintiffs incorporate by reference all of the allegations of all prior paragraphs as though fully set forth herein.

92.     NYCRR § 142-2.2 closely tracks the language of Section 207 of the FLSA.

93.     Plaintiffs and all other members of the New York Class employed by Defendants during the Class Period regularly worked more than 40 hours per week, and were, or are, compensated on a straight commission/per job basis with no premium pay for hours worked in excess of 40 hours.

94.     The commissions/ per job compensation that Plaintiffs and the other members of the New York Class received are "wages" within the meaning of New York Labor Law § 190(1) and, therefore, subject to the overtime pay requirements of New York Labor Law § 193.

95.     Members of the New York Class, those compensated on a per job basis are thus "employees" who receive "wages" within the meaning of New York Labor Law §§ 190(1) and 193.

96.     A defendant bears the burden of proving that its employees fall within an exemption enumerated in 12 NYCRR § 142-2.14.

97.     Because the provisions of the exemption are cumulative, each of the prerequisites must be satisfied, and thus, the absence of one of the requirements for the exemption ends the inquiry.

98.     There are no exemptions potentially applicable to Plaintiffs and members of the

New York Class.

99.     As a result of Defendant's failure to pay overtime, Plaintiffs and the members of

the New York Class were damaged in an amount to be proven at trial.

100.    Therefore, Plaintiffs demand that they and the members of the New York Class be

paid overtime compensation as required by New York Labor Law for every hour of overtime

worked in any work week for which they were not compensated, plus interest and attorneys' fees

as provided by law.

**THIRD CAUSE OF ACTION**
**Impermissible Deductions from Employees' Wages**
**(New York Labor Law § 193.1)**

101.    Plaintiffs incorporate by reference all of the allegations of all prior paragraphs as

though fully set forth herein.

102.    New York Labor Law expressly prohibits employers from making unauthorized

deductions from employees' wages.

103.    New York Labor Law § 193 provides:

**Deductions from wages:**

1.      No employer shall make any deduction from the wages of
an employee, except deductions which:

a.      are made in accordance with the provisions of any law
or any rule or regulation issued by any governmental
agency; or

b.      are expressly authorized in writing by the employee
and are for the benefit of the employee; provided that
such authorization is kept on file on the employer's
premises. Such authorized deductions shall be limited
to payments for insurance premiums, pension or
health and welfare benefits, contributions to charitable
organizations, payments for United States bonds,
payments for dues or assessments to a labor
organization, and similar payments for the benefit of

the employee.

N.Y. LAB. LAW § 193.2

104.    Thus, Section 193 prohibits deductions from employees' wages unless the deductions are (1) "expressly authorized" by and "for the benefit of the employee" and, (2) are limited to the enumerated categories of permissible deductions.

105.    As a result of Defendant's illegal deductions, Plaintiffs and the members of the New York Class were damaged in an amount to be proven at trial.

106.    Therefore, Plaintiffs demand that they and the members of the New York Class be compensated as required by New York Labor Law for every improper deduction made to their wages, plus interest and attorneys' fees as provided by law.

## FOURTH CAUSE OF ACTION
### Impermissible Deductions from Employees' Wages
### (New York Labor Law § 193.2)

107.    Plaintiffs incorporate by reference all of the allegations of all prior paragraphs as though fully set forth herein.

108.    New York Labor Law expressly prohibits employers from making unauthorized deductions from employees' wages.

109.    New York Labor Law § 193 provides:

**Deductions from wages:**

2.    No employer shall make any charge against wages, or **require an employee to make any payment by separate transaction** unless such charge or payment is permitted as a deduction from wages under the provisions of subdivision one of this section.

N.Y. LAB. LAW § 193.2 (Emphasis added)

110.    Thus, Section 193 prohibits employers from requiring employees to make

payments for transactions unless those payments are (1) "expressly authorized" by and "for the benefit of the employee" and, (2) are limited to the enumerated categories of permissible deductions.

111.     As a result of Defendant's illegal charges, Plaintiffs and the members of the New York Class were damaged in an amount to be proven at trial.

112.     Therefore, Plaintiffs demand that they and the members of the New York Class be compensated as required by New York Labor Law for every improper charge required of them, plus interest and attorneys' fees as provided by law.

**FIFTH CAUSE OF ACTION**
**Violation of The Notice and Recordkeeping Requirements**
**(New York Labor Law § 195)**

113.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

114.     Defendants failed to provide Plaintiff, and the other members of the New York Class, with a written notice of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

2.     Defendants are liable to Plaintiff and the other members of the New York Class in an amount to be proven at trial, plus attorney's fees as provided by law.

**SIXTH CAUSE OF ACTION**
**Violation of The Wage Statement Provisions**
**(New York Labor Law § 195)**

3.     Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

4.     Defendants failed to provide Plaintiff, and the other members of the New York Class, with a statement of wages with each payment of wages as required by NYLL §195(3).

5.     Defendants are liable to Plaintiff and the other members of the New York Class in an amount to be proven at trial, plus attorney's fees as provided by law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated persons, pray for the following relief:

A. Designation of this action as a collective action for the purposes of the claims brought on behalf of the FLSA Collective Plaintiffs, along with prompt issuance of opt-in notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class;

B. Designation of Plaintiffs as representatives of the FLSA Collective Plaintiffs;

C. Designation of this action as a class action pursuant to Fed. R. Civ. P. Rule 23 for the purposes of the claims brought on behalf of Class members;

D. An order declaring that Defendants violated the FLSA in the manners stated in this complaint;

E. An order declaring that Defendants' violations of the FLSA were willful;

F. An order declaring that Defendants violated the NYLL in the manners stated in this complaint;

G. An order declaring that Defendants' violations of the NYLL were willful;

H. An award of overtime compensation under the FLSA and NYLL;

I. An award for Defendants' violations of the NYLL for impermissible deductions made to employee wages, pursuant to NYLL §§ 193.1, 193.2;

J. An award for Defendants' violations of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b), 198(1-d);

K. An award of liquidated damages pursuant to the FLSA;

L. An award of damages for violations of NYLL;

M. All penalties available under the applicable laws;

N. Attorneys' fees pursuant to 29 U.S.C. § 216, NYLL § 663 and all other applicable statutes;

O. Interest as provided by law; and

P. Such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(c) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      December 23, 2016

By: Martin E. Restituyo, Esq.
Law Offices of Martin E. Restituyo P.C.
1345 Avenue of the Americas, 2nd Floor
New York, New York 10105
Tel:  212-729-7900
Fax: 212-729-7490
restituyo@restituyolaw.com

*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN IGLESIAS, individually and on behalf of all others similarly situated, | Index No. 16-cv-04598 |
| *Plaintiff,* | |
| -against- | |
| NATIONAL BROADBAND COMMUNICATIONS LLC, EXECUTIVE TECHNICIANS CORPORATION, CHRISTIAN CABEZAS, and ARAM COLINARES, | |
| *Defendants.* | |

<u>**CONSENT TO BECOME A PARTY PLAINTIFF**</u>

TO:    Clerk of the Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este document, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Henry Santana

Legal Representative / Abogado:   Law offices of Martin E. Restituyo P.C.

Signature / Firma:               *Henry Santana.*

Date / Fecha:                    December 16, 2016